# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **JOSEPH A. MOSS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:07-00454** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on the Plaintiff's Motion/Brief in Support of Complaint (Document No. 12.) and Defendant's Motion for Judgment on the Pleadings. (Document No. 13.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, Joseph A. Moss (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on July 9, 2003 (protective filing date), alleging disability as of March 1, 2000, due to depression, back and shoulder problems, and chest pain. (Tr. at 39, 61, 62-64, 202.) The claim was denied initially and upon reconsideration. (Tr. at 39-41, 46-48.) On August 23, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 49.) The hearing was held on May 10, 2005, before the Honorable Valerie A. Bawolek. (Tr. at 487-523.) By decision dated August 19, 2005, the ALJ found that Claimant was not entitled to benefits at any time through

September 30, 2004, but further found that he was entitled to benefits beginning October 1, 2004. (Tr. at 22-31.) Claimant requested review of the ALJ's decision, which request was granted and the Appeals Council issued its decision on June 12, 2007, finding that Claimant was disabled as of September 9, 2004, and was eligible for SSI benefits. (Tr. at 13-15.) Regarding Claimant's claim for DIB, the Appeals Council denied Claimant's request for review on June 12, 2007. (Tr. at 6-9.) The Appeals Council's decision therefore, became the final decision of the Commissioner on June 12, 2007. (Tr. at 6-9, 13-15.) On July 24, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the

claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent

> to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 29, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease, and a history of right dominant shoulder dislocation, which were severe impairments. (Tr. at 29, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 30, Finding No. 4.) The ALJ then found that Claimant had a residual

---

continued need for such an arrangement.

functional capacity for work at the light level of exertion as follows:

> The claimant is able to lift or carry twenty pounds occasionally and ten pounds frequently. He must be able to change position every fort-five minutes. He can never climb ropes or scaffolds. He can occasionally climb ladders, ramps, and stairs; balance; stoop; kneel; crouch; and crawl. He should avoid concentrated exposure to extreme cold, vibration, and hazards.

(Tr. at 30, Finding No. 6.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 30, Finding No. 7.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that through September 30, 2004, Claimant was considered an individual closely approaching advanced age, who could perform jobs such as a non-postal mail sorter, small products assembler, and gate keeper, at the light level of exertion. (Tr. at 30, Finding No. 12.) On this basis, DIB benefits were denied and SSI benefits were denied through September 30, 2004. (Tr. at 30, Finding No. 13.) On October 1, 2004, the ALJ found that Claimant was an individual of advanced age, and was under a disability since that date. (Tr. at 30, Finding Nos. 14.) The Appeals Council however, found that as of September 9, 2004, Claimant was an individual of advanced age who was disabled by application of Rule 202.06. (Tr. at 10-12, 13-15.) The ALJ did not find that Claimant was entitled to benefits prior to September 9, 2004. (Tr. at 6-9, 10-12, 13-15.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on September 10, 1949, and was 55 years old at the time of the administrative hearing, May 10, 2005. (Tr. at 14, 28, 62, 490.) Claimant had a high school education. (Tr. at 208.) In the past, he worked as a mine foreman. (Tr. at 203, 249-55.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in not giving great weight to the opinion and residual functional capacity assessment of Claimant's treating physician, Sanjay Mehta, D.O., without suitable explanation as to why he failed to give greater weight to Dr. Mehta's opinion. (Document No. 12 at 6-8.) Claimant alleges that the ALJ failed to consider the length of Dr. Mehta's treatment relationship, Dr. Mehta's specialization, and failed to explain why she found Dr. Mehta's opinion was not supported by the

7

medical findings or clinical observations in his treatment record, all contrary to the Regulations. (Id. at 7.) The Commissioner asserts that the ALJ properly gave less weight to Dr. Mehta's opinion in accordance with the Regulations because his opinion was not supported by his treatment notes or the testimony of the medical expert, Dr. Robert Marshall. (Document No. 13 at 7.) The Commissioner further asserts that Dr. Mehta's opinion is inconsistent with the other evidence of record, including the consultative examination of Dr. Evans. (Id.) Citing Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986), the Commissioner states that "[w]hile [Claimant] may disagree with the ALJ's weighing of the evidence, this does not mean it is erroneous. As long as the Commissioner's final decision is supported by substantial evidence, as it is here, it is entitled to deference by the Court." (Id.) Accordingly, the Commissioner asserts that Claimant's argument is without merit and that substantial evidence supports the ALJ's decision. (Id. at 5-7.)

Analysis.

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Ultimately, it is the

responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2), 416.927(d)(2)(2006).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2006).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted). Although medical source opinions are considered in evaluating an individual's residual functional capacity, the final responsibility for determining a claimant's RFC is reserved to the Commissioner. See 20 C.F.R. §

404.1527(e)(2) (2006). In determining disability, the ALJ must consider the medical source opinions "together with the rest of the relevant evidence we receive." Id. § 404.1527(b).

The medical evidence of record demonstrates that Claimant sought treatment from Dr. Sanjay Mehta, D.O., and his predecessor, Dr. Daniel B. Doyle, M.D., beginning March 5, 1996, for complaints of chest, back, shoulder, and leg pain. (Tr. at 452.) On that date, Dr. Doyle noted Claimant's reports of progressive exertional dyspnea, occasional non-anginal chest pain, and that he smoked about one pack of cigarettes per day. (Id.) Claimant reported chest wall pain on March 28, 2000, which Dr. Doyle opined was "probable musculoskeletal." (Tr. at 450.) On August 22, 2003, Dr. Mehta noted Claimant's reports of increased back pain for one year, which was worsened with stooping, bending, and twisting. (Tr. at 425.) Claimant reported that his back went out on him and that he attempted to control the pain by taking Tylenol and lying in bed for two to three days. (Id.) On examination, Dr. Mehta observed limited range of motion and assessed chronic low back pain for which he prescribed Voltaren 75mg. (Id.)

Claimant returned to Dr. Mehta approximately one year later, on September 2, 2004, complaining that his back pain had worsened the past month and that his pain was more intense on stooping, bending, or walking. (Tr. at 472.) Claimant reported that he could not do anything because of his pain. (Id.) Dr. Mehta assessed chronic back pain and noted that Claimant continued to smoke. (Id.) He prescribed Bextra 20mg and Tramadol 50mg. (Id.) On November 10, 2004, Claimant presented to Dr. Mehta, at the direction of his attorney, for the completion of a Medical Assessment of Ability to do Work-Related Activities (Physical). (Tr. at 471, 466-70.) Claimant reported that the Bextra helped his right shoulder discomfort but that he did not want to use the Tramadol, as it was

ineffective. (Tr. at 471.) In the physical assessment, Dr. Mehta opined that Claimant was capable of lifting twenty pounds occasionally and ten pounds frequently; standing, walking, and sitting for two to three hours, but only for forty-five minutes without interruption; frequently kneeling; occasionally stooping and crouching; and never climbing or crawling. (Tr. at 466-67.) Dr. Mehta noted that Claimant's ability to reach and push or pull was affected by his right shoulder impairment and that he had vision problems with corrective lenses. (Tr. at 468.) He further opined that Claimant was environmentally restricted from moving machinery, temperature extremes due to his back and shoulder pain, and dust and fumes due to his shortness of breath. (Id.) Dr. Mehta reported that "[a]ctivity causes him to 'end up on the couch for 2-3 days.'" (Tr. at 469.)

On July 7, 2005, an MRI scan of Claimant's lumbar spine, which was ordered by Dr. Mehta, revealed diffuse degenerative changes and mild diffuse bulging at L3-4 and L5-S1. (Tr. at 486.) This exhibit was not considered by the ALJ, but was submitted to the Appeals Council.

In addition to Dr. Mehta's and Dr. Doyle's treatment of Claimant, the medical evidence of record demonstrates that Claimant was examined on January 23, 2004, by Eugene Evans, D.O., at the request of the Agency. (Tr. at 366-73.) Claimant reported to Dr. Evans occasional sharp back pain with occasional radiation to his front left knee, which was caused by lifting, stooping, or bending. (Tr. at 366.) Claimant stated that his back and leg pain was better when lying down, using a back brace, or having a massage, and was worsened with increased activity and cold temperatures. (Id.) He also reported that he had dislocated his right shoulder and had damage to the muscles and other structures, for which surgery somewhat helped. (Id.) He described his shoulder pain as an occasional dull ache in nature, without radiation. (Id.) Claimant reported that his shoulder pain was

11

better with medications and massage and was worsened with cold temperatures, lifting, and movement. (Id.) Finally, Claimant reported that he suffered anxiety and depression, which was better when he talked with family, friends, and his doctor, and when he used his prescription medications. (Tr. at 366-67.) Claimant noted that these conditions were worse when he was under stress, when he worried, or when he was in a crowd of people. (Tr. at 367.)

On physical examination, Dr. Evans observed normal ranges of motion in all areas, negative straight leg raises, a normal gait without the use of any assistive devices, and normal reflexes, strength, and grip. (Tr. at 367-68.) Claimant was able to heel and toe walk and squat and arise without difficulty. (Tr. at 367.) Dr. Evans observed that Claimant "showed no evidence of any unusual behavior, although he did appear to be mildly depressed during the examination and interview. There did not appear to be any mental impairment severe enough to restrict his daily activities." (Tr. at 368.) He opined that Claimant was capable of performing "certain work-related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking and traveling at least on a light to moderate duty basis." (Id.)

Objective evidence, by means of x-rays of Claimant's lumbar spine on January 23, 2004, revealed osteophytic lipping of the lower thoracic and lumbar vertebral bodies and narrowing of the lower thoracic and lumbar intervertebral disc spaces. (Tr. at 371.) The medical record also contains the physical RFC assessments from two state agency medical consultants. (Tr. at 388-96, 397-405.) The first assessment was completed by Russ L. Go, M.D., on December 18, 2003. (Tr. at 388-96.) Dr. Go opined that Claimant could perform work at the light level of exertion with occasional postural limitations with the exception of never climbing ropes, and environmental limitations

including an avoidance of extreme cold, vibration, and hazards. (Tr. at 388-89, 392.) Dr. Go did not find any limitations in reaching, handling, fingering, or feeling. (Tr. at 391.) He concluded that Claimant's back and right shoulder pain was partially credible to the extent that it limited him to performing light work. (Tr. at 393.) In support of his opinion, Dr. Go noted Dr. Mehta's progress notes, including the August 22, 2003, note in which he reported Claimant's limited range of back motion. (Tr. at 395.) On February 4, 2004, after considering the January 23, 2004, lumbar spine x-rays and Dr. Evans's consultative examination, Dr. Go opined that from Claimant's date last insured through March 31, 2000, and the prior period, Claimant was capable of performing medium exertional level work; for the current application, Dr. Go opined that from September 24, 2003, Claimant was capable of performing only light exertional level work. (Tr. at 392-93, 395.)

On June 18, 2004, James K. Egnor II, M.D., another state agency medical consultant, opined that Claimant was capable of performing work at the medium level of exertion, with environmental limitations for avoiding extreme cold, fumes, odors, dusts, gases, and poor ventilation due to Claimant's pain and chronic obstructive pulmonary disease. (Tr. at 398, 401.) Dr. Egnor did not assess any postural or manipulative limitations, and opined that Claimant was only partially credible. (Tr. at 399-400, 404.) In support of his opinion, Dr. Egnor noted Dr. Mehta's progress notes and Dr. Evans's consultative examination. (Tr. at 404.)

Finally, the medical expert, Dr. Robert Marshall, testified at the administrative hearing that Dr. Mehta's assessed lifting limitations of twenty pounds occasionally and nothing on a regular basis did not make any sense. (Tr. at 508.) He noted that despite Dr. Mehta's opinion that Claimant could never climb or crawl, Claimant could climb ramps or stairs if he had to. (Id.) Dr. Marshall opined

13

that Dr. Mehta was "bending over backwards a little bit" in assessing such restrictive limitations. (Id.) Dr. Marshall testified that when Dr. Mehta completed his assessment he had not seen Claimant in approximately one year, because Claimant could not afford treatment, with the exception of the September 2, 2004, note in which he noted general distress, low back pain, and limited range of motion and assessed chronic back pain. (Tr. at 508-09.) Dr. Marshall further noted that Dr. Mehta's progress notes were "extremely brief." (Tr. at 508-09.)

Dr. Marshall testified that Dr. Go's assessment, that Claimant could perform light exertional level work, was more realistic than Dr. Egnor's or Dr. Mehta's assessments. (Tr. at 508.) Regarding Claimant's right shoulder impairment, Dr. Marshall testified that following surgery, Claimant exhibited good range of motion, and therefore, was unsure why Claimant continued to have shoulder discomfort. (Tr. at 506.) He opined that the discomfort may have been related to Claimant's back impairment. (Id.) Regarding Claimant's back impairment, Dr. Marshall testified that a second MRI demonstrated some degenerative changes that most likely had increased with his age, but no disc problems. (Tr. at 506-07.) He also noted the consultative examination of Dr. Evans. (Tr. at 507.) After considering all the evidence of record, including Claimant's testimony, Dr. Marshall opined that Claimant was limited to performing light exertional level work, with occasional stooping and bending, frequent lifting of ten pounds, and occasional lifting of twenty to twenty-five pounds. (Tr. at 511.) He opined that Claimant could sit all day as long as he had the ability to stand and stretch every so often. (Tr. at 512.) He further opined that Claimant did not have any limitations resulting from his pulmonary impairment. (Tr. at 511.) Dr. Marshall indicated that there was no basis for Dr. Mehta's standing and walking limitations, though it was reasonable to find that Claimant could stand

14

only forty-five minutes without interruption. (Tr. at 512.)

In his decision, the ALJ summarized the medical evidence of record and Claimant's testimony. (Tr. at 24, 26-27.) The ALJ accorded Dr. Mehta's November 10, 2004, opinion little weight because it was "not supported by objective medical findings, and no such findings are evident within the treatment record." (Tr. at 27.) The ALJ noted that the record contained no abnormal physical findings after 1998, and that Dr. Evans's consultative examination revealed normal findings except for right shoulder tenderness. (Id.) In addition, the ALJ noted that the medical expert, Dr. Marshall, testified that Dr. Mehta's assessed limitations did not make any sense given the objective findings of record. (Id.) The ALJ, therefore, concluded that Dr. Mehta's assessment was "not supported by objective medical findings and is inconsistent with the overall medical record." (Id.) The ALJ determined that Dr. Go's assessment and Dr. Marshall's testimony was "consistent with the overall medical record." (Tr. at 27.)

Citing Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984), Claimant argues that the ALJ erred in discounting Dr. Mehta's opinion as being inconsistent with the evidence of record because an ALJ "does not have the power to discount the functional conclusions of examining or treating physicians on the basis that such conclusions are not supported by clinical findings because he does not 'possess' any medical 'expertise.'" (Document No. 12 at 6.) The Court finds that Claimant's reliance on Wilson is misplaced. In Wilson, the ALJ found that the clinical findings of the claimant's examining physician, Dr. Marshall, did not support the severity of limitations assessed in his physical capacities evaluation. Wilson, 743 F.2d at 221. The Fourth Circuit however, found that Dr. Marshall's clinical findings were not significantly different from those of Claimant's treating

physician, Dr. Flynn, and that there was "nothing in the record from any treating or examining physician any more beneficial to the Secretary than Dr. Marshall's report." Id. The Court therefore found that in

> finding that Dr. Marshall's clinical findings did not support his conclusions as to plaintiff's functional limitations, the ALJ erroneously exercised an expertise he did not possess in the field of orthopedic medicine. Not only for that reason, but because Dr. Marshall's diagnosis and conclusions were supported by those of Dr. Flynn, a treating physician, both of which were uncontradicted except as they differed from each other in degree, we are of opinion the finding of the ALJ that plaintiff's functional capacity was any greater than that described by Dr. Marshall is without substantial evidence to support it.

Id.

The instant case can be distinguished from the facts of Wilson in that Dr. Mehta's opinion is inconsistent with and contradicted by the consultative examination of Dr. Evans, the RFC assessments of the state agency medical consultants, and the testimony of Dr. Marshall, a non-examining medical expert. As discussed above, Dr. Evans's examination revealed essentially normal findings, and Drs. Go, Egnor, and Marshall reviewed his consultative report, together with Dr. Mehta's treatment notes and determined that Claimant was capable of performing work at the light exertional level. The ALJ properly credited more weight to the opinions of the state agency medical consultants and the medical expert over that of Claimant's "treating" physician. See Smith v. Schweiker, 795 F.2d 343, 356 (4th Cir. 1986) (stating that "the testimony of a non-examining physician can be relied upon when it is consistent with the record" and that "if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand."). Furthermore, Dr. Mehta's sporadic progress notes, which contained limited findings consisting primarily of one note of limited

range of back motion, do not support his strict limitations.

Claimant further argues that the ALJ erred in failing to provide an explanation for his according little weight to Dr. Mehta's opinion. (Document No. 12 at 7.) Claimant asserts that "[w]e are left to speculate as to her reason." (Id.) Though the ALJ did not state specifically how Dr. Mehta's opinion was inconsistent with his treatment notes and the other evidence of record, the inconsistencies are clear from the ALJ's prior summary of the evidence. (Tr. at 24, 26-27.)

Finally, Claimant alleges that the ALJ erred in not considering all the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6), specifically, the length of Dr. Mehta's treatment relationship with Claimant and his specialization. Claimant correctly points out that the ALJ did not discuss specifically these two factors. However, these additional factors provide little support for Claimant's argument. Though Dr. Mehta was Claimant's treating physician, the medical evidence reveals that Claimant was first examined by Dr. Mehta on August 22, 2003, at which time he reported increased back pain on stooping, bending, and twisting. On exam, Dr. Mehta reported only limited range of motion. Dr. Mehta subsequently examined Claimant approximately one year later on September 2, 2004, and rendered his RFC assessment two months later on November 10, 2004. Thus, the medical records indicate that Dr. Mehta examined Claimant approximately three times. Furthermore, the medical records do not indicate that Dr. Mehta was anything more than a family practitioner, contrary to Claimant's allegation that he was a specialist. Accordingly, the Court finds that while it may have been error for the ALJ not to address these two factors, such error is harmless as such failure does not impact the ALJ's decision. Accordingly, the Court finds that the ALJ's decision to accord little weight to Dr. Mehta's November 10, 2004, RFC assessment is supported

by substantial evidence of record.

The Court finds that the ALJ properly evaluated the evidence of record, including the opinion and RFC assessment of Dr. Mehta. The ALJ's evaluation of the evidence was proper and in accordance with the applicable law and Regulations, and her RFC determination is supported by substantial evidence of record. Accordingly, Claimant's argument is without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion/Brief in Support of Complaint (Document No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 13.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 19, 2008.

R. Clarke VanDervort
United States Magistrate Judge